# EXHIBIT E

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROGER E. DOBROVODSKY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**I. INTRODUCTION**

1. From no later than March 2017 through July 2018, Defendant Roger E. Dobrovodsky served as an unregistered broker on behalf of 1 Global Capital, LLC ("1 Global" or "the Company"), a South Florida merchant cash advance company. During that time, Dobrovodsky raised more than $5.2 million for 1 Global from the offer and sale of securities in unregistered transactions to numerous investors in at least 60 transactions. Dobrovodsky earned at least $317,690 in commissions from those sales.

2. 1 Global marketed its investment as a safe and secure alternative to the stock market and baselessly claimed that investing in the Company's merchant cash advance business would achieve high single-digit or low double-digit annual returns. Like other 1 Global sales agents, Dobrovodsky repeated those claims to prospective investors. He also repeated 1 Global's false assertions that its notes were not securities.

3. Unbeknownst to Dobrovodsky's clients, many of whom invested their retirement savings, 1 Global's business was a fraud. 1 Global and its chairman and chief executive officer

Carl Ruderman were misrepresenting how they were using investor money, syphoning off millions in investor funds to fund Ruderman's luxury lifestyle and operate unrelated businesses. 1 Global's business came to a crashing halt when it filed for bankruptcy in July 2018, leaving many of Dobrovodsky's customers and thousands of other investors with hundreds of millions of dollars in losses.

4. During the time he offered and sold 1 Global's securities, Dobrovodsky was not registered as a broker-dealer with the Commission or associated with a registered broker-dealer. Additionally, 1 Global did not register its securities offering with the Commission, and there was no applicable exemption from registration for this offering.

5. By engaging in this conduct, Dobrovodsky violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)], and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)]. The Commission seeks an injunction against Dobrovodsky from future violations of these provisions, as well as disgorgement of ill-gotten gains, prejudgment interest on disgorgement, and a civil money penalty.

## II. DEFENDANT

6. Dobrovodsky, 65, resides in Indianapolis, Indiana. He previously held Series 6 and 63 securities licenses and from April 2003 until April 2019 was associated with EDU Wealth Advisers, LLC, an investment adviser firm registered with the State of Indiana. Dobrovodsky is state-licensed to sell insurance and annuity products.

## III. JURISDICTION

7. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], and Sections 21(d), 21(e) and

27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

8.    This Court has personal jurisdiction over Dobrovodsky and venue is proper in the Southern District of Florida because 1 Global transacted business from its headquarters in Hallandale Beach, Florida, and Dobrovodsky regularly transacted business with 1 Global by email, telephone, and mail from March 2017 through July 2018. These transactions included the sale of securities in an unregistered offering while not being registered as or associated with a broker-dealer, the acts that constituted the violations alleged in this Complaint.

9.    In connection with the conduct alleged in this Complaint, Dobrovodsky, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## IV.  FACTUAL ALLEGATIONS

### A.  The 1 Global Offering

10.    From 2014 until July 27, 2018, 1 Global and Ruderman fraudulently raised at least $320 million from the sale of unregistered securities to more than 3,600 investors nationwide. 1 Global was in the business of funding merchant cash advances ("MCAs") - short-term loans to small and medium-sized businesses. According to its marketing materials and website, 1 Global provided these businesses with an alternative source of funding to traditional bank loans and other financing methods. 1 Global funded its MCA business and operations almost entirely with money from investors, whom the Company referred to alternately as "Lenders" or "Syndicate Partners."

11.    For the vast majority of the four-plus years 1 Global offered and sold its investment, it used instruments entitled either a Syndication Partner Agreement ("SPA") or a Memorandum of Indebtedness ("MOI") as the note or contract between the Company and investors. The SPAs

3

termed the investors partners, while the MOIs called investors lenders. The only use of investor funds 1 Global specifically identified in both documents as well as in its marketing materials was for MCAs. After 1 Global received investor funds, it pooled and commingled them together in non-segregated 1 Global bank accounts.

12. The SPAs and MOIs had terms of either nine months or one year. While the MOI stated that it was a nine-month note, for most of the time 1 Global raised money from investors the MOI also stated the note would automatically roll over into a new nine-month term unless the investor expressly informed the Company in writing at least 30 days before the end of the nine months that he or she did not want the note to roll over.

13. 1 Global represented to investors in marketing materials it gave its sales agents to distribute - including Dobrovodsky - that it collected an average of $1.30 to $1.40 on each dollar it advanced in an MCA. This was the means by which 1 Global and investors both purportedly made a profit.

14. Although 1 Global sent investors monthly account statements purporting to show each investor's account credited with interest payments, investors did not receive those payments right away. 1 Global only paid that interest when investors cashed out. Thus, the majority of investors, who allowed their investments to roll after nine months, never received interest payments and ultimately lost their principal. This practice allowed 1 Global and Ruderman to misappropriate investor funds.

15. The profitability of the 1 Global investment was derived solely from the efforts of 1 Global. Investors had no control over how Ruderman and 1 Global used their money. Investors could not and did not manage their MCA loan portfolios; it was solely up to 1 Global whether and when to use an investor's money to fund MCAs and which MCAs to fund. The success of the

4

investment and whether an investor earned profits was solely dependent on 1 Global's decisions on MCA funding and other uses of money, as well as repayment and collection efforts.

### B. 1 Global and Ruderman's Misrepresentations

16. 1 Global and Ruderman's false representations to investors in marketing materials and on monthly account statements included: (a) that 1 Global would use their money to fund MCAs; (b) the monthly statements accurately disclosed the existing value of the investment; and (c) that the Company's supposed independent audit firm agreed with 1 Global's method of calculating investors' returns.

17. In reality, 1 Global and Ruderman used a substantial amount of investors' funds for purposes other than making MCAs, including on operations and non-MCA business transactions. In addition, Ruderman misappropriated at least $32 million in investor funds to enrich himself as well as several companies in which he or his family members had a direct interest. This included money to help fund a family vacation to Greece, monthly payments for a Mercedes Benz, monthly American Express credit card payments, payments for Ruderman's household staff, $4 million to his family trust, and $1 million to one of his sons to invest in cryptocurrency.

18. Furthermore, with Ruderman's knowledge, 1 Global provided every investor with a monthly account statement that falsely showed the investor's portfolio value. The statements reflected the investor's fractional interest in a number of MCAs, and a monetary figure alternatively called "cash not yet deployed," "cash to be deployed," or "cash for future receivables." Regardless of the terminology used, the figure represented the amount of the investment that 1 Global had not yet put into MCAs and was purportedly sitting in 1 Global's bank accounts available for MCA funding.

19. However, starting no later than October 2017, the monthly account statements were

5

false because, due in large part to Ruderman's misappropriation, they overstated by $23 million to $50 million the amount of cash available for investors in 1 Global's bank accounts. Because that amount was false, the total value of each investor's portfolio, the increase in the valuation since the original investment, and the rate of return each account statement showed, were all overstated.

20. Finally, each investor's monthly account statement falsely claimed, "Our independent audit firm, Daszkal Bolton L.L.P., has endorsed and agrees with the rate of return formula." However, Daszkal Bolton never audited 1 Global's financial statements, and never endorsed or agreed with 1 Global's rate of return formula.

### C. Dobrovodsky Acted as an Unregistered Broker-Dealer and Offered and Sold 1 Global Notes in Unregistered Securities Transactions

21. 1 Global recruited a network of dozens of external, mostly unregistered, sales agents, including Dobrovodsky. Dobrovodsky signed a sales agreement with 1 Global in February 2017 calling for him to receive a six percent commission on all direct sales he made and another six percent for renewals.

22. 1 Global regularly provided sales materials to Dobrovodsky and other sales agents for use in marketing the investment. Those materials included a list of Frequently Asked Questions, a history of the Company, and a description of both the MCA program and the investment process. Dobrovodsky and other sales agents used the materials in soliciting clients to invest, attaching them to emails and using the information when they spoke to prospective investors.

23. The marketing materials touted 1 Global's alleged consistently high returns for investors. The Frequently Asked Questions claimed 1 Global investors had *averaged* "high single digit" and "low double digit" annual returns. In addition, 1 Global sent copies of monthly investor account statements to Dobrovodsky and other sales agents to show investors. Those account

6

statements showed returns ranging from 8 to 17 percent a year.

24. Using this information, Dobrovodsky and other sales agents told investors 1 Global could earn high single digit to low double digit returns a year. Both the Company and sales agents stressed that 1 Global offered better returns than fixed instruments such as annuities, and was a safe, short-term alternative to more risky stock market investments.

25. From no later than March 2017 through July 2018, Dobrovodsky used the 1 Global materials to offer and sell 1 Global's securities to investors via various means, including emails, telephone calls, and in-person meetings. 1 Global paid Dobrovodsky $317,690 in transaction-based sales commissions, earned as a result of raising approximately $5.2 million in at least 60 transactions with investors. During the time he sold 1 Global notes in unregistered securities offerings, Dobrovodsky was neither a registered broker-dealer nor associated with a registered broker-dealer.

## CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

26. The Commission repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities Dobrovodsky offered and sold as described in this Complaint and no exemption from registration existed with respect to these securities.

28. From no later than March 2017 and continuing through July 2018, Dobrovodsky directly and indirectly:

7

      (a)      made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

      (b)      carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

      (c)      made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

29. By reason of the foregoing, Dobrovodsky violated, and unless enjoined is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a)(1) of the Exchange Act

30. The Commission repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

31. From no later than March 2017 and continuing through July 2018, Dobrovodsky, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the Commission as a broker or dealer or not associated with an entity registered with the Commission as a broker-dealer.

32. By reason of the foregoing, Dobrovodsky violated, and unless enjoined is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

8

**RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests the Court find Dobrovodsky committed the violations alleged, and:

**A.**

**Permanent Injunctive Relief**

Issue a permanent injunction enjoining Dobrovodsky from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

**B.**

**Disgorgement and Prejudgment Interest**

Issue an Order directing Dobrovodsky to disgorge all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

**C.**

**Civil Money Penalty**

Issue an Order directing Dobrovodsky to pay a civil money penalty pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

**D.**

**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**E.**

**Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or

to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

December 14, 2020    Respectfully submitted,

Robert K. Levenson, Esq.
Senior Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
Email: levensonr@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300

10

JS 44 (Rev 10/20) FLSD Revised 10/14/2020

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Securities and Exchange Commission

## DEFENDANTS
DOBROVODSKY, Roger E.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Marion County, IN
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert K. Levenson, SEC, 801 Brickell Ave. Ste 1950; (305) 982-6341
levensonr@sec.gov

Attorneys *(If Known)*
James Klimek, 320 N. Meridian St.#612, Indianapolis, IN 46204
(317) 800-3297; james.klimek@klimek-law.com

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☒ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U S Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U S Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff) (For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act |  |  | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine |  | ☐ 840 Trademark | ☐ 460 Deportation |
|  | ☐ 345 Marine Product Liability | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med Malpractice / ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  | ☐ 791 Empl Ret Inc Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  |  | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** |  | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / **Other:** |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment / ☐ 530 General | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other / ☐ 535 Death Penalty | ☐ 462 Naturalization Application |  |  |
|  | / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights |  |  |  |
|  | / ☐ 555 Prison Condition |  |  |  |
|  | / ☐ 560 Civil Detainee – Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed *(See VI below)*
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)
*(See instructions):* a) Re-filed Case ☐YES ☐NO    b) Related Cases ☒YES ☐NO
JUDGE: Hon. Beth Bloom    DOCKET NUMBER: 18-cv-61991-BB

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 77e(a) and 77e(c); 15 U.S.C. § 78o(a)(1)-violation of federal securities laws
LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ disgorgement and civil penalty    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
DATE: December 14, 2020
SIGNATURE OF ATTORNEY OF RECORD: s/Robert K. Levenson

**FOR OFFICE USE ONLY : RECEIPT # ___    AMOUNT ___    IFP ___    JUDGE ___    MAG JUDGE ___**