IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, | § § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | CAUSE NO. 1:22-cv-00259-RP |
| ROGER DOBROVODSKY, as Trustee of EDU Holding Trust d/t/d 3/22/2013; DAVID W. GARRISON; ROBIN RISMILLER; and JANE AND JOHN DOES 1-100 | § § § § | |
| *Defendants*. | § | |

## TRUSTEE'S MOTION FOR DISBURSEMENT OF INTERPLEADER FUNDS, AND MOTION TO DISMISS

Defendant Roger Dobrovodsky, as Trustee of EDU Holding Trust d/t/d 3/22/2013 (the Trustee) files this motion for disbursement of interpleader funds, pursuant to Rule 67(b) of the Federal Rules of Civil Procedure and in accordance with 28 U.S.C. §§ 2041 and 2042, and motion to dismiss; and in support thereof would respectfully show as follows:

### I.    INTRODUCTION

The proceeds of a $5 million life insurance policy have been interpleaded into this Court's registry.  There is no reasonable dispute that the sole beneficiary of that policy is the EDU Holding Trust (represented in this lawsuit by the Trustee).

As beneficiaries of the EDU Holding Trust, defendants David Garrison and Robin Rismiller (along with more than 100 other trust beneficiaries) have rights to receive fractional interests of the policy benefits currently held in this Court's registry.  Those investors do **not** have

a direct contractual relationship with the insurer (plaintiff The United States Life Insurance Company in the City of New York, or U.S. Life), and no rights to receive policy benefits at all, aside from their status as beneficiaries of the EDU Holding Trust.

Nevertheless, to avoid an unnecessary dispute and to streamline payouts to EDU Holding Trust beneficiaries, the Trustee is proposing disbursement of the funds in this Court's registry, together with any accrued interest thereon, as follows:

- to the IRA Account of Mr. Garrison, in the amount of $102,567.00;

- to Ms. Rismiller, in the amount of $240,800.00; and

- all remaining funds to the Trustee, for distribution of the amounts due to the other beneficiaries of the EDU Holding Trust.

Ms. Rismiller is not opposed to this proposed disbursement. Mr. Garrison is opposed to receiving a direct payment from this Court's registry for the full amount he is due from these policy benefits—because he is attempting to negotiate an exit on investments in *other* life insurance policies he has made with the EDU Holding Trust. Mr. Garrison's opposition should be rejected, because it is not based on any claim related to proceeds that have been interpleaded in this Court's registry.

For these reasons, the Trustee respectfully requests an order (i) granting this motion for disbursement of interpleaded funds; (ii) distributing the interpleaded funds as described in this motion; (iii) dismissing this interpleader action upon disbursement of all funds held in this Court's registry; and for such other and further relief to which the Trustee would be justly entitled.

## II.    BACKGROUND

The only facts truly necessary to authorize disbursement of the funds in this Court's registry are (i) the EDU Holding Trust is the indisputable policyholder, owner, and beneficiary of policy number 3001548L issued by U.S. Life on the life of Carol Green, now deceased (the Policy);

and (ii) the EDU Holding Trust is seeking disbursement of those funds. But to address certain allegations made in U.S. Life's original complaint,[1] the Trustee provides below background on the EDU Holding Trust's business and operations.

**A.    Factual Background**

**1.    EDU Holding Trust and its Life Settlement Agreements**

In early 2013, after discussions over several months with a number of individuals active in the life settlement services industry, the principals of an Indianapolis-based financial services company, EDU Financial Strategies, LLC, launched a new program to market, sell, and administer investments in the form of fractional interests in the benefits payable under insurance policies issued on the lives of select individuals that are acquired through life settlements with the original holders of such policies.[2]

On March 22, 2013, EDU Trust Services LLC was organized in the State of Indiana to facilitate the management and administration of fractional interests sold to investors in insurance policy death benefits.[3] On that same day, EDU Holding Trust was established to serve as the entity that would acquire and own the selected life insurance policies.[4] Purchasers of fractional interests would become beneficiaries of the EDU Holding Trust but would not own a direct interest in any insurance policy.[5]

As detailed in the Private Placement Memorandum (PPM) delivered to each prospective accredited investors in these so-called "life settlements" (as an example, a copy of the PPM

---

[1] *See, e.g.*, Original complaint (Doc. 1), at ¶¶ 12–13, 19, 21.

[2] Declaration of Roger Dobrovodsky (Sept.7, 2022), at ¶ 8, attached as Exhibit A.

[3] *See* Ex. A (Dobrovodsky declaration), at ¶ 9.

[4] *See* Ex. A (Dobrovodsky declaration), at ¶ 9.

[5] *See* Ex. A (Dobrovodsky declaration), at ¶ 9.

delivered to Mr. Garrison is attached as Exhibit B), the program offered purchasers of such fractional interests a fixed portion of the benefits to be paid under a portfolio of insurance policies held on the lives of selected senior individuals.[6]

Purchasers of the interests paid an agreed purchase price into an escrow account with the Bank of Utah.[7] The bank then applied a portion of the aggregated investor funds to acquire specific policies, with the EDU Holding Trust named as beneficial owner of those policies.[8] Pursuant to agreements with Capstone Capital Management, LLC (Capstone), an independent life settlement services company, the remaining investor funds were deposited by the Bank of Utah into Capstone Capital Trust, a trust established by Capstone with UBS Financial Services.[9]

Capstone and its affiliated companies are in the business of providing premium reserve management services to the life settlement industry.[10] Capstone maintains premium reserve funds that are structured to provide sufficient funds to maintain senior life settlement policies until their maturity.[11]

Capstone established a reserve with respect to each policy, based on anticipated future premiums and the estimated life expectancy of the policy's insured individual (calculated by averaging the insured's life expectancy as determined by at least two independent licensed providers) plus an additional two years.[12] Capstone also maintains a general premium reserve fund

---

[6] *See* Ex. A (Dobrovodsky declaration), at ¶ 10; Ex. B (PPM), at pp. 5–6.

[7] *See* Ex. A (Dobrovodsky declaration), at ¶ 11.

[8] *See* Ex. A (Dobrovodsky declaration), at ¶ 11.

[9] *See* Ex. A (Dobrovodsky declaration), at ¶ 12.

[10] *See* Ex. A (Dobrovodsky declaration), at ¶ 13.

[11] *See* Ex. A (Dobrovodsky declaration), at ¶ 13.

[12] *See* Ex. A (Dobrovodsky declaration), at ¶ 13; *see also* Ex. B (PPM), at pp. 7–8.

to pay future premiums on any individual policy that may exceed its "life expectancy plus two years."[13]

Another independent company, Track-Life, LLC, monitors the life status of policy insureds and notifies Capstone, and Capstone in turn the Trust, when a policy matures and a death benefit may be claimed by the Trust.[14]  Importantly for purposes of this lawsuit, prospective purchasers of fractional interests in these life settlements were apprised in the PPM of numerous risk factors associated with such products, including, *inter alia:* (i) no direct ownership of the life insurance policy by the holders of fractional interests, and (ii) potential delay in the payment of the death benefit.[15]

On or about February 22, 2013, Mr. Garrison signed a Life Settlement Purchase Agreement to purchase a portfolio of fractional beneficial interests in the death benefits of several life settlement insurance policies, including the Policy at issue in this action.[16]  In consideration of the purchase price paid by Mr. Garrison, that Agreement specifies a fixed-dollar "Payout At Maturity" of that Policy to his IRA account.[17]

On or about May 21, 2014, Ms. Rismiller (formerly Robin Areddy) signed a Life Settlement Purchase Agreement to purchase a portfolio of fractional beneficial interests in the death benefits of certain life settlement insurance policies, including the Policy at issue in this action.[18]  In consideration of the purchase price paid by Ms. Rismiller, that Agreement specifies a

---

[13] *See* Ex. A (Dobrovodsky declaration), at ¶ 14.

[14] *See* Ex. A (Dobrovodsky declaration), at ¶ 15.

[15] *See* Ex. A (Dobrovodsky declaration), at ¶16.

[16] *See* Ex. A (Dobrovodsky declaration), at ¶ 17.

[17] *See* Ex. A (Dobrovodsky declaration), at ¶ 17.

[18] *See* Ex. A (Dobrovodsky declaration), at ¶ 18.

fixed-dollar "Payout At Maturity" of that Policy.[19]

In addition to Mr. Garrison and Ms. Rismiller, the Trust entered into similar Life Settlement Purchase Agreements with 112 other individuals who purchased fractional beneficial interests in the death benefit payable under the Policy at issue in this action, each of whom is entitled to a fixed-dollar "Payout At Maturity" specified in their respective agreement.[20]

Attorney Andrew J. Einterz served as the original trustee of the EDU Holding Trust and was largely responsible for preparing both the form of Life Settlement Purchase Agreement and the accompanying PPM utilized by the EDU Holding Trust in its fractional interest offerings.[21] Mr. Einterz is also identified as signing all such Agreements on behalf of the Trust.[22]

Mr. Einterz resigned as trustee of the Trust on April 6, 2020, concurrently appointing Roger Dobrovodsky as successor trustee.[23]  Mr. Einterz died three months later, on July 4, 2020.[24]

### 2. Trustee Roger Dobrovodsky

Mr. Dobrovodsky was one of the founders of EDU Financial Strategies, LLC, an Indianapolis-based company organized in the State of Indiana in 2003, with the goal of educating clients about safe money principles, retirement planning, and estate planning.[25]  In the years

---

[19] *See* Ex. A (Dobrovodsky declaration), at ¶ 18.

[20] *See* Ex. A (Dobrovodsky declaration), at ¶ 19.

[21] *See* Ex. A (Dobrovodsky declaration), at ¶ 20.  In the Agreement and Declaration of Trust dated March 22, 2013 that created the Trust, the initial trustee is identified as EDU Trust Services, LLC, with Mr. Einterz identified as signing for the Einterz Law Firm on behalf of that entity.  However, in a contemporaneous Affidavit of Trust and in later documents signed by Mr. Einterz, he identifies himself, personally, as the trustee of the EDU Holding Trust under the March 22, 2013 declaration.

[22] *See* Ex. A (Dobrovodsky declaration), at ¶ 20.

[23] *See* Ex. A (Dobrovodsky declaration), at ¶ 21.

[24] *See* Ex. A (Dobrovodsky declaration), at ¶ 21.

[25] *See* Ex. A (Dobrovodsky declaration), at ¶ 5.

following, Mr. Dobrovodsky, acting through EDU Financial Strategies, LLC and other EDU-affiliated companies, and working in conjunction with other professional firms and individuals, expanded the scope of these enterprises to include tax preparation services and the marketing and sale of a variety of insurance products and investment opportunities.[26]

For several years, Mr. Dobrovodsky held Series 6 and 63 securities licenses (required to sell insurance policies tied to investments) and was associated with EDU Wealth Advisers, LLC, an EDU-affiliate company (then registered in Indiana and with the Securities and Exchange Commission) as an investment advisor.[27]  Mr. Dobrovodsky was also previously licensed to sell insurance and annuity products in Indiana.[28]  Prior to being named trustee of the Trust in April 2020, Mr. Dobrovodsky was primarily engaged in the marketing of insurance- and investment-related products and private offerings, including the EDU Holding Trust's life settlement agreements.[29]

Among the products sold by Mr. Dobrovodsky were investment opportunities in the form of promissory notes offered by 1 Global Capital, LLC (1 Global), a company based in Florida.[30]  Unbeknownst at the time to both Mr. Dobrovodsky and his clients, 1 Global's business was a fraud perpetrated by the company and its chief executive officer.[31]  That fraud was revealed in July 2018, when 1 Global filed for bankruptcy and its business "came to a crashing halt."[32]

---

[26] *See* Ex. A (Dobrovodsky declaration), at ¶ 6.

[27] *See* Ex. A (Dobrovodsky declaration), at ¶ 7.

[28] *See* Ex. A (Dobrovodsky declaration), at ¶ 7.

[29] *See* Ex. A (Dobrovodsky declaration), at ¶¶ 3-4.

[30] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(a).

[31] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(a).

[32] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(a); *see also Complaint for Injunctive and Other Relie*f (Doc. 1-5), at ¶¶ 1–3.

As one of many 1 Global sales agents who earned commissions on the sale of interests in notes later determined by the SEC to be unregistered securities, Mr. Dobrovodsky was the subject of a Complaint filed by the SEC on December 14, 2020, seeking, *inter alia,* the disgorgement of the commissions earned by him on those sales.[33]  Mr. Dobrovodsky consented to the entering of a Final Judgment against him, filed the following day (a copy of which is attached as Exhibit C), in which he agreed to disgorge $317,690 in commissions he had earned on the sale of the 1 Global securities, plus prejudgment interest and a civil penalty, all totaling $399,728.[34]  The Final Judgment expressly provided that Mr. Dobrovodsky's consent was not an admission of any of the allegations of the Complaint beyond jurisdiction of the Court.[35]

### 3.    Maturity of the Policy

On August 2, 2021, Carol Green, the individual whose life was insured under the Policy, died.[36]  Shortly thereafter, the Trustee was notified of the death by Track-Life, the company responsible for monitoring the status of policies held by the EDU Holding Trust.[37]

By letters dated August 11 and September 23, 2021, maturity notifications were sent by the Trustee to Mr. Garrison and Ms. Rismiller, respectively.[38]  These notifications advised Mr. Garrison and Ms. Rismiller of the dollar amounts each would receive from the Policy death benefit,

---

[33] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(b).

[34] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(c).

[35] *See* Ex. A (Dobrovodsky declaration), at ¶ 35(c); *see also* Exhibit C, *Final Judgment Against Defendant Roger Dobrovodsky,* United States District Court for the Southern District of Florida, Case No. 20-cv-62561-AHS (Doc. 4), entered December 15, 2020.

[36] *See* Ex. A (Dobrovodsky declaration), at ¶ 22.

[37] *See* Ex. A (Dobrovodsky declaration), at ¶ 22.

[38] *See* Ex. A (Dobrovodsky declaration), at ¶ 23.

pending processing of the claim by the insurance company and issuance of a death certificate for the deceased Ms. Green.[39]

Mr. Garrison and Ms. Rismiller were each asked to complete and return an enclosed "Direction of Maturity Deposit" form so that their fractional interest payments could be properly directed.[40]  The Trustee also advised them of the possibility of a delay in the issuance of a death certificate for the decedent by the state of New York, which the Trustee understood was likely on account of the COVID-19 pandemic.[41]  Similar maturity notifications were sent by the Trustee to each of the 112 other holders of fractional interests with respect to the Policy death benefits.[42]

On December 13, 2021, the Trustee made inquiry to his contacts at Capstone as to whether a death certificate had been issued by New York or if claim documents had been received from U.S. Life.[43]  Informed that no such documents had been received by Capstone, the Trustee continued his own efforts (albeit unsuccessfully) to obtain a death certificate for Ms. Green.[44]

By cover letter to the EDU Holding Trust dated February 1, 2022 (but not mailed until February 8, 2022, and received by the Trustee on February 18, 2022), U.S. Life sent to the Trustee forms and a list of other documents required by U.S. Life to finalize the EDU Holding Trust's claim with respect to the Policy so that the death benefit proceeds could be released.[45]  The Trustee completed and mailed the forms and other relevant documents to U.S. Life on February 21, 2022.[46]

---

[39] *See* Ex. A (Dobrovodsky declaration), at ¶ 23.

[40] *See* Ex. A (Dobrovodsky declaration), at ¶ 24.

[41] *See* Ex. A (Dobrovodsky declaration), at ¶ 24.

[42] *See* Ex. A (Dobrovodsky declaration), at ¶ 25.

[43] *See* Ex. A (Dobrovodsky declaration), at ¶ 26.

[44] *See* Ex. A (Dobrovodsky declaration), at ¶ 26.

[45] *See* Ex. A (Dobrovodsky declaration), at ¶ 27.

[46] *See* Ex. A (Dobrovodsky declaration), at ¶ 28.  U.S. Life acknowledged receipt of this

The Trustee was subsequently advised by a representative of U.S. Life that all requisite documents, including (presumably) the late Ms. Green's death certificate, were in U.S. Life's file and that the EDU Holding Trust should expect the issuance of the Policy death benefit shortly.[47]

By letter dated October 1, 2021, Mr. Garrison sent a letter to numerous parties, including the Trustee, EDU Trust Services, LLC and various offices of American General Life Insurance Company (i.e., U.S. Life) claiming—incorrectly—that Mr. Garrison had "partial ownership interests" in various life insurance policies owned by EDU Holding Trust, including the Policy.[48] That letter further demanded that proceeds from the Policy be deposited directly to Mr. Garrison's IRA account with Forge Trust Company, the IRA custodian.[49]  A copy of that letter was Exhibit G to U.S. Life's original complaint (Doc. 1-7).

By letter dated February 23, 2022, Ms. Rismiller sent a "Litigation Hold" letter to U.S. Life requesting that it not pay Ms. Rismiller's "share of the death benefits … to EDU Holding Trust" without her prior written consent.[50]  In contrast to the letter from Mr. Garrison, Ms. Rismiller correctly himself as "an investor in EDU Holding Trust" and did not claim any ownership interest in the Policy on account of which death benefits are to be paid.[51]

On March 18, 2022, alleging "actual or potential rival, adverse, and conflicting claims to the death benefit" to be paid on account of the Policy, and claiming it is "unable to discharge its

---

correspondence in paragraph 17 of its Complaint (Doc. 1).  A copy of the Trustee's completed "Proof of Death / Claimant's Statement" was included as Exhibit H to U.S. Life's original complaint (Doc. 1-8).

[47] *See* Ex. A (Dobrovodsky declaration), at ¶ 29.

[48] *See* Ex. A (Dobrovodsky declaration), at ¶ 30.

[49] *See* Ex. A (Dobrovodsky declaration), at ¶ 30.

[50] *See* Ex. A (Dobrovodsky declaration), at ¶ 31.

[51] *See* Rismiller letter (Doc. 1-9).

admitted liability without exposure to multiple liability, multiple litigation, or both," U.S. Life filed its original complaint for interpleader relief.[52]

### 4.    The matter of George S. Blankenbaker, Jr.

The Complaint refers to a criminal action filed against one George S. Blankenbaker Jr.,[53] presumably for the purpose of suggesting that the Trustee and the EDU Holding Trust were or are somehow involved in the fraudulent activity for which Mr. Blankenbaker was later convicted. Mr. Blankenbaker was one of several individuals involved in the organization of EDU Financial Strategies, LLC in April 2003.[54]

Mr. Blankenbaker served as, or was the principal of, the registered agent for EDU Financial Strategies, LLC from 2003 until the termination of his involvement with that company and its affiliate companies (the EDU Group) in 2019.[55] During that period, he assumed responsibility for all filings made by the EDU Group companies with the Indiana Secretary of State's Office.[56] He also designated his personal business office as both the registered office and principal office of those companies.[57]

In addition to his involvement with the EDU Group, Mr. Blankenbaker engaged in various other business and investment-related enterprises through other companies organized by him, including the so-called "Stargrower Entities."[58]    At all relevant times, Mr. Blankenbaker

---

[52] *See* Original complaint (Doc. 1), at ¶ 21.

[53] *See* Original complaint (Doc. 1), at ¶ 13.

[54] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(a).

[55] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(a).

[56] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(a).

[57] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(a).

[58] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(b). Stargrower Commercial Bridge Loan Fund I LLC and Stargrower Asset Management, LLC, as identified in the criminal Information filing with

maintained a personal business office that was separate and apart from those of the Trustee and other associates of the EDU Group.[59]  The Trustee had only very limited contact with Mr. Blankenbaker during this period (which generally involved EDU Group organizational matters) and no involvement in Mr. Blankenbaker's own business activities, whether pertaining to any affiliate of the EDU Group, the EDU Holding Trust, or any other enterprise.[60]

In 2019, the Trustee discovered that Mr. Blankenbaker had been using EDU Group bank funds and undisclosed lines of credit to pay for a variety of Mr. Blankenbaker's personal expenses over the course of several years.[61]  Though Mr. Blankenbaker had reimbursed the EDU Group for some of those charges, a substantial amount of these expenses, totaling in excess of $964,000, remains outstanding.[62]  The Trustee personally paid off the balance of an EDU Group credit card issued to Mr. Blankenbaker after he failed to make required minimum payments.[63]

About this same time, the Trustee learned that Mr. Blankenbaker was under investigation by federal authorities in connection with his alleged misappropriation of funds in connection with various investment enterprises with which he was associated, including his diversion of funds paid out on an insurance policy in 2016 that should have been distributed to EDU Holding Trust beneficiaries.[64]

---

respect to Mr. Blankenbaker.  *See* Doc. 1-6.

[59] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(c).

[60] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(c).

[61] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(d).

[62] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(d).

[63] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(d).

[64] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(e).

Upon learning of these allegations, the Trustee took steps to assure that Mr. Blankenbaker has no authority or lawful means of acquiring control over any funds belonging to or due the EDU Holding Trust.[65]  Mr. Blankenbaker was removed as registered agent for all EDU Group entities and the Trustee assumed that responsibility.[66]  The registered and principal offices identified for these companies was also changed from Mr. Blankenbaker's personal office to the business offices of the Trustee and the EDU Group.[67]

On March 31, 2021, a criminal "Information" was filed against Mr. Blankenbaker in the United States District Court for the Southern District of Indiana.[68]  As alleged in that filing, in or about 2016, Mr. Blankenbaker criminally diverted "to himself for other purposes" certain investor funds intended for the purchase of the Trust's life insurance policies and engaged in other fraudulent activities unrelated to the Trust.[69]  Mr. Blankenbaker later pled guilty to wire fraud and money laundering, and was sentenced to sixty (60) months in prison and ordered to pay restitution to his victims of more than $1.18 million.[70]

Prior to the filing of the criminal Information against Blankenbaker, the Trustee had been wholly unaware of Mr. Blankenbaker's criminal activities, and the Trustee has never been accused of any crime or other wrongdoing associated with Mr. Blankenbaker.[71]

---

[65] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(f).

[66] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(f).

[67] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(f).

[68] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(g).

[69] *See* Ex. A (Dobrovodsky declaration), at ¶ 36(g); *see also* Information (Doc. 1-6).

[70] *See United States of America v. George S. Blankenbaker, Jr.*, Cause No. 1:21-CR-00102-001, pending in the United States District Court for the Southern District of Indiana (Doc. 32).

[71] *See* Ex. A (Dobrovodsky declaration), at ¶ 37.

**B.    Procedural background**

On March 18, 2022, U.S. Life filed its original complaint seeking, *inter alia,* to interplead funds comprising the death benefit payable pursuant to the Policy.[72]  In its complaint, U.S. Life asserted that it was "unable to determine the proper beneficiaries" of an insurance policy death benefit and claimed it feared "exposure to multiple liability, multiple litigation, or both" due to what it alleged to be "continued and unresolved allegations of fraudulent activity by EDU Holding Trust and Dobrovodsky."[73]

On March 28, 2022, U.S. Life filed a motion to deposit funds into this this Court's registry, in the amount of $5 million (the face amount death benefit of the Policy) plus accrued interest.[74] This Court granted U.S. Life's motion to deposit such funds on March 29, 2022.[75]

On April 11, 2022, U.S. Life requested permission to deposit a lesser amount in the Court's Registry (specifically, $4,938,701.50, plus accrued interest) to reflect an outstanding loan against the Policy.[76]  That request was granted by the Court on April 12, 2022.[77]  On April 12, 2022, U.S. Life deposited $4,938,701.50 in the Court's Registry.[78]

On May 6, 2022, Mr. Garrison filed his answer to U.S. Life's complaint.[79]  On May 17, 2022, the Trustee filed his answer to the complaint.[80]  On May 20, 2022, the third named co-

---

[72] *See* Complaint (Doc. 1) at ¶¶ 8, 22.

[73] *See* Complaint (Doc. 1) at ¶ 19.

[74] *See* Plaintiff's motion to deposit funds (Doc. 5).

[75] *See* Order granting Plaintiff's motion to deposit funds (Doc. 6).

[76] *See* Plaintiff's motion to amend order to deposit funds (Doc. 8).

[77] *See* Order granting Plaintiff's motion to amend order to deposit funds (Doc. 9).

[78] *See* Registry Deposit Receipt acknowledgment (Doc. 10).

[79] *See* Answer of co-defendant David Garrison (Doc. 12).

[80] *See* Answer of Mr. Dobrovodsky (Doc. 13).

defendant in this action, Ms. Rismiller, filed her original answer to the complaint.[81]

On June 20, 2022, U.S. Life filed its unopposed motion for discharge from further liability, including a request for its attorney fees in the amount of $6,000.00 to be paid out of the funds deposited in this Court's registry.[82]  On June 23, 2022, the Court granted U.S. Life's unopposed motion for discharge, ordered the Court clerk to promptly disburse $6,000.00 from the funds on deposit in the registry in payment of U.S. Life's awarded attorney fees, and dismissed U.S. Life from this cause with prejudice.[83]

On August 24, 2022, this Court ordered the remaining parties to submit a joint proposed scheduling order on or before September 8, 2022.[84]

### III.    ARGUMENTS AND AUTHORITIES

#### A.    Legal standards

Title 28, Section 1335, of the United States Code provides in relevant part that the district court shall have original jurisdiction of any civil action of interpleader filed by any person having issued a policy of insurance of value or amount of $500 or more, if (1) two or more adverse claimants of diverse citizenship claim or may claim to be entitled to any of the benefits arising by virtue of such policy, and if (2) the plaintiff has deposited the amount due under the policy into the registry of the court, there to abide the judgment of the court.[85]

Under Rule 67, interpleader funds deposited with the court must be deposited in an interest-

---

[81] *See* Answer of co-defendant Robin Rismiller (Doc. 14).

[82] *See* U.S. Life's unopposed motion for discharge from further liability (Doc. 15).

[83] *See* Order granting unopposed motion for discharge from further liability (Doc. 16).

[84] *See* Order for Scheduling Recommendations/Proposed Scheduling Order (Doc. 17).

[85] *See* 28 U.S.C. § 1335.

bearing account or court-approved instrument.[86]   Once deposited, the court should determine ownership of the funds and make disbursements.[87]

The interpleader funds may be withdrawn only by order of the court in accordance with Sections 2041 and 2042 of Title 28 of the United States Code.[88]

**B.     The interpleaded funds indisputably belong to the EDU Holding Trust, but the Trustee proposes making direct distributions to the only two interested parties (Garrison and Rismiller) who have appeared in this lawsuit.**

As acknowledged by U.S. Life in its complaint (and established by documents attached as exhibits to the complaint), the EDU Holding Trust became both the sole owner and sole primary beneficiary of the Policy on or about June 24, 2015.[89]   U.S. Life further acknowledged that the insured under the Policy died on August 2, 2021, and that, "[a]s a result of the Decedent's death, the death benefit payable pursuant to the Policy became due and owing to the beneficiary or beneficiaries."[90]

The EDU Holding Trust is and remains the sole owner and beneficiary of the Policy, and neither the named co-defendants, Mr. Garrison and Ms. Rismiller, nor any of the other holders of fractional interests in the death benefit payable under the Policy, have any ownership or beneficial claim to or under the Policy itself.

Rather, Mr. Garrison and Ms. Rismiller, and each of the 112 other holders of fractional interests in the Policy death benefit, have a contractual right to receive from the EDU Holding

---

[86] *See* FED. R. CIV. P. 67.

[87] *See In re Craig's Stores of Texas, Inc., v. Bank of Louisiana,* 402 F.3d 522 (5th Cir. 2005) (*citing Gulf States Utils. Co. v. Alabama Power Co.,* 824 F.2d 1465, 1474 (5th Cir. 1987)).

[88] *See* FED. R. CIV. P. 67; 28 U.S.C. §§ 2041, 2042.

[89] *See* Original complaint (Doc. 1), at ¶ 11; Change of Ownership (Doc. 1-3); Change of Beneficiary (Doc.1-4).

[90] *See* Original complaint (Doc. 1), at ¶¶ 14–15.

Trust a specific dollar amount to be paid to them from the Policy proceeds received by the EDU Holding Trust. On that basis, the EDU Holding Trust alone (as sole beneficiary under the Policy) is entitled to the entirety of the interpleader funds constituting the net death benefit paid into this Court's registry by U.S. Life on April 12, 2022,[91] less the $6,000.00 in attorney fees awarded and paid to U.S. Life,[92] plus any accrued interest thereon.

Nevertheless, to expedite the payments due to all holders of fractional interests in the Policy death benefit, the Trustee seeks an order from this Court authorizing disbursement of the amounts that would otherwise paid by the Trust (i) to the named co-defendants in this action, (ii) with the remainder of the interpleaded funds paid out to the Trustee. That way, the Trustee can promptly distribute the amounts due each of the other 112 holders of contractual interests in accordance with their respective life settlement agreements with the EDU Holding Trust, as previously reported to them in the maturity notifications sent by the Trustee.

In view of the number and nature of the payees involved (which include several IRA accounts for which the custodian requires the submission of specific paperwork); the prior experience of the Trustee in disbursing monies due payees out of the proceeds of other policies for which a death benefit has been paid to the EDU Holding Trust; as well as the presumed interest of all payees in promptly receiving the monies due them under their Life Settlement Agreements; the Trustee is not only entitled to the net proceeds deposited with the Court, but he is best suited to carry out their prompt and proper distribution.

The Trustee has prepared a schedule of those pay-outs and can provide this Court with a copy of that schedule (either *in-camera* or under seal, as the Court may direct), to protect the

---

[91] *See supra*, paragraph 5.

[92] *See* the Court's Discharge Order (Doc. 16).

privacy and confidentiality of the payees and the amounts to which they are each entitled.  Upon completion of all payments due the designated payees, the Trustee can also prepare and file with the Court a verified statement confirming the payment of such amounts in accordance with each payee's respective agreement, together with a redacted schedule of such payments that preserves the confidentiality of the payees' identities.

**C.    Ms. Rismiller is not opposed to receiving direct payment of the amount of her fractional interest; Mr. Garrison is opposed.**

The Trustee has conferred with Ms. Rismiller regarding the filing of this motion for the release of the interpleaded funds.  Ms. Rismiller has advised that (without admitting or waiving her right to later contest any of the factual statements, representations, and legal contentions asserted in this motion), she does not oppose this motion and consents to the proposed disbursement of the net interpleaded funds.

The Trustee has also conferred with Mr. Garrison regarding the filing of this motion for the release of the interpleaded funds.  His October 1, 2021 letter states he has a claim to $102,567 of the funds in this Court's registry.[93]

But Mr. Garrison opposes the proposed disbursement of funds—even though he would be receiving 100% of the amount he would be due for his fractional interest in the Policy's benefits— because he wants to be bought out of other, separate investments he has made with the EDU Holding Trust.  Mr. Garrison has advised he will not consent to any disbursement of funds in this lawsuit unless he is bought out of his other investments.

Mr. Garrison's lack of consent is not a legitimate objection to the Trustee's proposed disbursement of funds, because it is not based on any claim to the interpleaded funds (which were

---

[93] *See* Garrison letter (Doc. 1-7), at 3–4.

the Policy benefits).  Mr. Garrison's opposition should therefore be rejected.

### IV.    CONCLUSION

For these reasons, the Trustee respectfully requests an order (i) granting this motion for disbursement of interpleaded funds; (ii) distributing the interpleaded funds as described in this motion; (iii) dismissing this interpleader action upon disbursement of all funds held in this Court's registry; and for such other and further relief to which the Trustee would be justly entitled.


Dated: September 8, 2022                Respectfully submitted,

                                        HOWRY BREEN & HERMAN, L.L.P.

                                        James C. Hatchitt
                                        State Bar No. 24072478
                                        jhatchitt@howrybreen.com
                                        1900 Pearl Street
                                        Austin, Texas 78705-5408
                                        Tel. (512) 474-7300
                                        Fax (512) 474-8557

                                        *Attorney for defendant Roger Dobrovodsky, as*
                                        *Trustee of EDU Holding Trust dtd 3/22/2013*


### CERTIFICATE OF CONFERENCE

In compliance with local rule CV-7(i), I certify that I conferred by telephone and email with counsel for defendants David Garrison and Robin Rismiller on August 2, 2022, and September 1, 2022, to see if their clients were opposed to the relief sought by this motion..  Counsel for Ms. Rismiller stated she was not opposed.  Counsel for Mr. Garrison stated he was opposed.  This motion is therefore presented as **UNOPPOSED** by Ms. Rismiller and **OPPOSED** by Mr. Garrison.

James Hatchitt

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was delivered on September 8, 2022, in accordance with Rule 5(b)(2) of the Federal Rules of Civil Procedure, to the parties listed and in the manner indicated below:

| | |
|---|---|
| Randall A. Pulman | ✓ Electronic service |
| rpulman@pulmanlaw.com | ☐ In person |
| Shari P. Pulman | ☐ Registered mail, return receipt requested |
| spulman@pulmanlaw.com | ☐ Commercial delivery service |
| Leslie Sara Hyman | ☐ Facsimile |
| lhyman@pulmanlaw.com | ☐ Electronic mail |
| PULMAN, CAPPUCCIO, PULLEN, BENSON | |
| & JONES LLP | |
| 2161 NW Military Highway, Suite 400 | |
| San Antonio, TX 78213 | |
| Tel. 210-222-9494 | |
| Fax 210-892-1610 | |

*Attorneys for defendant David W. Garrison*

| | |
|---|---|
| April Elizabeth Lucas | ✓ Electronic service |
| alucas@mcginnislaw.com | ☐ In person |
| Austin L. Jones | ☐ Registered mail, return receipt requested |
| ajones@mcginniaslaw.com | ☐ Commercial delivery service |
| MCGINNIS LOCHRIDGE LLP | ☐ Facsimile |
| 1111 West 6th Street, Bldg. B, Suite 400 | ☐ Electronic mail |
| Austin, TX 78703 | |
| Tel. 512-495-6000 | |
| Fax 512-495-6093 | |

*Attorneys for defendant Robin Rismiller*

James Hatchitt

- 20 -